(63 South. 860.)

No. 19,534.

RAPIDES LUMBER CO., Limited, v. WRIGHT.

WRIGHT v. RAPIDES LUMBER CO., Limited.

(Dec. 1, 1913. Rehearing Denied Jan. 5, 1914.)

*(Syllabus by the Court.)*

1. EJECTMENT (§ 16*) — POSSESSION — EVIDENCE.

While possession, under a title, of part of a tract is possession of the whole, still one claiming under a homestead title which has been rejected by the register of the land office cannot be said to be in possession by virtue of a title, even though an appeal has been taken from the decision of the register to the Commissioner General, who sustained the register, and to the Secretary of the Interior, where it is now pending, because the Secretary of the Interior may never hold that the claimant had a title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 30–41; Dec. Dig. § 16.*]

2. EJECTMENT (§ 16*)—TITLE—CONSTRUCTIVE POSSESSION.

Where one claims to have acquired title to land, but does not know the extent of his alleged title, he cannot be said to be in constructive possession of the whole tract by merely possessing a part.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 30–41; Dec. Dig. § 16.*]

3. EJECTMENT (§ 95*) — POSSESSION — SUFFICIENCY OF EVIDENCE.

Besides, appellant did not have possession of the land of which he claimed the possession.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 280–295; Dec. Dig. § 95.*]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Two actions between the Rapides Lumber Company, Limited, and Elisha Wright, defendant in one, and plaintiff in the other, consolidated for trial. From the judgment, Elisha Wright appeals. Affirmed.

Robt. P. & John R. Hunter, of Alexandria, for appellant. Blackman, Overton, Dawkins & Mims, of Alexandria, for appellee.

BREAUX, C. J. The actions are exclusively possessory, and there is no question of title. The two suits, the one by the Rapides Company, as plaintiff, and the other by Elisha Wright, as plaintiff, are consolidated for the trial. The respective plaintiffs claim possession of the same land.

The Rapides Lumber Company (hereafter for brevity abbreviated the Rapides Company) traces its title to the New Orleans-Pacific Company, grantee of the general government, by grant bearing date April, 1885.

At first, possession is claimed by Elisha Wright as a homesteader under act of Congress of February 8, 1887.

The Rapides Company, as plaintiff in one suit, alleged that it was disturbed in its possession by the defendant. It claims that it has the real and actual possession, and that it has had possession since about eight

years; that it owns a large, continuous, connected tract; that its actual possession of a part was with the intent to possess the entire tract; that less than a year had elapsed since defendant, Wright, began to disturb its possession. The Rapides Company, plaintiff, asks to be maintained in its possession and enjoyment of the property. It alleged that the defendant is acting in bad faith, and has no title. Plaintiff, the Rapides Company, also asked for a writ of injunction, which was granted on the 11th day of March, 1911. On the 27th of the same month Elisha Wright, the defendant, instituted suit against plaintiff, the Rapides Company, for the possession.

He claims possession under the homestead laws of the United States, with the bona fide intention of acquiring a homestead thereon. This plaintiff alleges, further, that the land was in possession, prior to the year 1882, of J. A. Wright, who held it with the intention of entering it under the homestead laws of the United States, but that these lands were patented in error to the New Orleans & Pacific Railway Company; that the Rapides Company threatens to run its tramway forcibly upon this land, cut down the timber, and convert it into lumber, although it has no legal title, and is, as this plaintiff alleges, a trespasser.

These petitions were put at issue by each defendant. Each denied that plaintiff ever had possession or right of possession.

In this last suit, plaintiff obtained an injunction, which was dissolved on bond.

This sufficiently sets forth the issues presented by the pleadings for the purpose of the decision.

The judgment below was in favor of the Rapides Company, except as to the inclosure of Wright. His (Wright's) demand for the value of the timber was rejected.

Elisha Wright, plaintiff in one of the suits, and defendant in the other, prosecutes this appeal. The Rapides Company has not appealed.

The facts are that plaintiff owns a sawmill and woodland, and has exercised and exercises such dominion over its lands as is usually exercised by sawmill companies owning bodies of land through its agents, surveyors, and cruisers, and by occasionally cutting down and hauling away trees from part of the land. Plaintiff's sawmill is at a distance of 14 miles from the land in controversy. Plaintiff has a corral in section 32, also at a considerable distance from the land. The land is part of a connected whole, or consists of adjacent tracts.

Defendant produced a register's receipt, dated October, 1911, of amount paid by him on his application for the E. ½ of the N. W. ¼ and the W. ½ of the N. E. ¼, 160 acres.

This application for a homestead entry was made six months after the suit was instituted. It was subsequently canceled.

Relative to defendant's asserted possession, the facts are that part of the land was in possession of different persons from time to time. This possession was not continuous and successive except of 6 acres which belonged to the defendant.

There were large, little, and old fields on the 160 acres in question at different times, which were owned by different persons. It does not appear that this land was in the actual and open possession of the defendant and cultivated by him.

Defendant, Wright, also claimed damages for pine trees that had been cut down and hauled away.

At the outset, we will state that the possession of neither party appears as having been particularly strong and eminent, although it does appear to have been a little more marked on the part of the plaintiff, with its sawmill, cutting down of trees, laying tramways, and other acts, and the different corrals that it had put up at different times on different

parts of the place where it gathered cattle.

The district judge, who is of the locality, who saw the witnesses when they were testifying, knew some of them, doubtless, thought that the preponderance on this branch of the case was with the plaintiff.

We will not declare that he has committed an error in this respect.

It follows from the foregoing that plaintiff had possession of a part of the land, and claimed possession of the whole tract. It had a large body of acres of land, over 8,000, and thus occupying part the contention is that it occupied the whole tract; that it had title sufficient to sustain the plea of possession.

In order to maintain their respective claims to possession of the land, and to prove the limit of this possession, plaintiffs and defendants have introduced titles. They have gone a little further than claim the benefit of the title exclusively as relates to possession. One attacks the title of the other, and the contention of each is that it or he has the better title. The defendant attacks plaintiff's title on the ground that the patent of lands issued in the year 1871 to the New Orleans & Baton Rouge & Vicksburg Railway Company contained a condition that all lands in the actual occupancy of the settler in 1881 and November, 1882, the time of the definite location of the New Orleans & Pacific Railway Company, the successor of the first-named company, should be excepted from the grant of lands, and that this exception was to operate in favor, not only of the settlers, but of their heirs and assignees, who should make homestead entries on these lands.

Plaintiff's contention, on the other hand, is that defendant's title could have no effect, as it was issued after the suit had been instituted, and, besides, that it was not public land subject to entry.

[1-3] However the contention of plaintiff

134 La.—6

against defendant's title, or defendant against plaintiff's, may be decided, as it all relates to 12 months' possession, it can have no decisive influence on the question of title, although title may be considered in passing upon the right to possession.

Defendant has never had possession of a part of the 160 acres he claims as a homestead. The 6-acre tract on which he has his dwelling is not on the 160 acres.

It is sufficient if one enters on and occupies part of the land, provided that it be the intention of possessing all that is included within the boundary. Code, art. 3437.

But, in addition, even if the 6 acres are inclosed within the 160 acres, defendant, on the face of the papers, has no title. The register of the land office decided against him. He took the case up to the Commissioner General, who affirmed the register.

Learned counsel for Wright seems to have overlooked the difficulty in this case, namely, of maintaining possession of other land than that actually in possession on the theory that defendant has a title. The title claimed in this instance is quite in an incomplete state, and may never become a valid homestead title. It is now before the Secretary of the Interior. Should he reverse the Commissioner General and the register, it will be an easy matter to assert title. Should he fail, things will remain as they are.

To return to possession for a moment: Prof. Evans, a timber examiner and surveyor, and an expert, testified that he had occasion some time in March, 1912, to examine the E. ½ of N. W. ¼ section 9, township 11 N., range 5 W.; that defendant did not live within the limits above described; his house is north in section 4; that defendant had only 5 or 6 acres inclosed; the old fields to which we have before referred are not adjacent to the home of defendant at all; that the fields projected from other lands.

It must be remembered that the Rapides Company claims the E. ½ of the N. W. ¼, section 9.

The defendant has not shown that he has had in his possession any part of this land 12 months prior to the suit.

It may be that the defendant, or those from whom he holds the original right, had what is spoken of in the testimony as the settler's right. We do not propose to decide that question at all, as we are only to consider the 12 months' possession prior to the filing of the suit. A settler's right in the present condition of the case does not authorize him to extend his claim beyond his actual possession.

In regard to settler's right, the following has come within our notice: The defendant said as a witness that he bought the right of his father. He did not know what his father claimed. From that point of view, it leaves him scant ground to claim possession 12 months preceding the suit.

Plaintiff, as relates to possession, has not acquired much more than the defendant; but the fact remains that it has possession given by the statutes of the general government.

Under Act March 2, 1896, c. 39, 29 Stat. 42 (U. S. Comp. St. 1901, p. 1603), the time limit to annul patents by the United States is 5 years.

Whatever may be the rights of defendant and others under that act cannot be considered and given effect to in this case. It is now before the land department of the general government, as before mentioned.

We will remain content after deciding, for reasons stated, that defendant has not the required possession to maintain a possessory action.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.